[No. 12692.  Department Two.  January 15, 1916.]

GEORGE C. DUFUR, *Appellant*, v. LEWIS RIVER BOOM & LOGGING COMPANY, *Respondent*.[1]

LOGS AND LOGGING — BOOMING COMPANY — LIABILITY FOR LOSS — STATUTES. A booming and driving company is not obligated to catch and boom all the logs that may be driven down a stream, under the statute, either prior to its amendment in 1909, when booming and driving companies were (by Laws 1889-90, p. 470, as amended by Laws 1895, p. 128 and Laws 1905, pp. 108 and 232) only required to boom logs which the owner requested to be caught or logs which came down not in charge of the owner, regardless of the original navigability of the stream; nor after its amendment, when by Rem. & Bal. Code, § 7123, tolls were authorized by a driving and booming company, operating on a stream that was theretofore navigable, for all logs which it drives or booms at the request of the owner, or without such request when commingled with other logs or which obstructed the drive, and also upon logs which are driven or floated down a stream which was not navigable prior to the company's improvement of the stream.

SAME — BOOMING COMPANY — ACTION FOR LOSS OF LOGS — PLEADING — COMPLAINT — SUFFICIENCY — LEGAL CONCLUSION. A complaint against a booming and driving company for the loss of logs floated down the stream must allege facts to show that the plaintiff's logs reached the defendant's boom in some of the ways which, under the statute, imposed the duty to catch and boom them, since the company is not obligated to boom all logs that may be driven; and where the complaint is silent as to the facts, the mere allegation that "it became the duty of defendant to catch and hold" the logs is a mere conclusion of law and insufficient to state a cause of action.

[1] Reported in 154 Pac. 463.

Appeal from a judgment of the superior court for Cowlitz county, Darch, J., entered November 10, 1914, upon sustaining a demurrer to the complaint, dismissing an action for damages. Affirmed.

*B. L. Hubbell,* for appellant.
*Miller & Wilkinson,* for respondent.

Fullerton, J.—The appellant brought this action against respondent, stating his cause as follows:

"(1)    That the defendant is now, and was at all times hereinafter alleged and mentioned, a corporation doing business under and by virtue of the laws of the state of Washington, and was at said times a public service corporation organized for the purpose of driving, sacking, sorting, rafting and booming logs and other timber products, and was engaged in operating a boom at the mouth of the Lewis river in the county of Cowlitz and state of Washington at the confluence of said Lewis river with the Columbia river.

"(2)    That during the times herein mentioned, the Kalama Lumber, Log and Timber Company was a corporation organized and doing business under and by virtue of the laws of the state of Washington, and engaged in lumbering in Cowlitz county, Washington.

"(3)    That between the 1st day of September, 1907, and the 23d day of February, 1912, the said Kalama, Lumber, Log and Timber Company placed in the Lewis river and floated to the rafting and booming grounds of defendant at the mouth of the said Lewis river, 3,855,454 feet of logs.

"(4)    That it became and was the duty of defendant to catch and hold, assort and raft said logs, and to account therefor to the owners thereof; that defendant rafted and accounted for 2,223,068 feet of said logs so floated to said rafting grounds by the said Kalama Lumber, Log & Timber Company.

"(5)    That of said 3,855,454 feet of logs so floated to the rafting and booming grounds of defendant, said defendant failed to catch and hold, assort, boom and raft 1,632,386 feet, and has utterly failed to account therefor, though demand has been made therefor; that said logs were of the value of $9 per thousand feet, and plaintiff is damaged by

defendant's failure to so catch and hold, assort, boom and raft' said 1,632,386 feet, in the sum of $14,688.61.

"(6)  That plaintiff has no knowledge or belief as to what disposition was made of said logs by defendant, and is unable to allege whether said logs were converted by defendant or lost; that plaintiff has been informed and believes that defendant failed to catch and hold a portion thereof, and allowed a portion thereof to escape from its booms, but plaintiff is not informed as to what amount defendant failed to catch and hold, and what amount was allowed to escape from defendant's booms, and is unable to allege said amounts; that defendant has informed plaintiff that it has none of said logs in its possession.

"(7)  That heretofore, to wit, on the 4th day of January, 1912, the said Kalama Lumber, Log and Timber Company duly assigned the said claim and cause of action against defendant to plaintiff herein."

To the complaint, the respondent interposed a demurrer on the grounds: (1) That the complaint did not state facts sufficient to constitute a cause of action; and (2) that the action was not commenced within the time limited by law. At the hearing had upon the demurrer, the trial court sustained the same; entering a general order to that effect without specifying upon which of the grounds stated in the demurrer the order was rested, and granting to the appellant ten days within which to amend his complaint. Thereafter the appellant gave notice that he refused to plead further, and that he elected to stand upon the complaint, whereupon the court entered a judgment against him, dismissing his action with costs. This appeal is from the judgment so entered.

The action, it will be observed, is founded upon the so-called booming and driving statutes of the state. The statute of 1889-90 provides for the organization of corporations for the purposes of catching, booming, sorting, rafting and holding logs and other timber products, and empowers such corporations, when so organized, to go upon any of the "waters of the state or the dividing waters thereof" and to construct and maintain the necessary booms and other works

for the purposes mentioned. It further provides that, when such works are constructed, the corporation shall catch, boom, sort, raft and hold the logs and timber products of all persons requesting such service, and, when the works are erected at the mouth of any river, the logs and timber products which shall come to the works not in charge of the owner, without such request; reasonable tolls being provided for the services. (Laws of 1889-90, p. 470.)

In 1895 (Laws of 1895, p. 128), the legislature provided for the organization and incorporation of companies for the purpose of clearing out and improving rivers and streams and for driving logs and other timber products thereon. The act empowered any such corporation to enter upon any of the rivers and streams of the state or the dividing waters thereof and remove jams, roots, snags and rocks therefrom, straighten the channel of such streams, build wing dams and sheer booms thereon, and construct dams with gates for storing water with which to create artificial freshets therein. It made it the duty of such corporations, after the construction of such works, to sluice, sack and drive all logs and timber products which the owner should request to be so sluiced, sacked and driven, and all logs and timber products without such request which lay in such position as to obstruct or impede a drive; empowering it to charge tolls for such service not exceeding a certain maximum. The act also provided that boom companies theretofore incorporated might also become driving corporations by filing amended articles of incorporation embodying the provisions of the act; each of these acts providing that any corporation acting under and in accordance with their provisions should be liable to the owner of logs or timber products for all loss or damage resulting from neglect, carelessness or unnecessary delay on the part of such corporations.

The act of 1895 was twice amended by the legislature in 1905. Laws of 1905, pp. 108 and 232. In the one act, the provisions of the corporation were somewhat more definitely

defined and limited; and in the other, it was empowered to operate upon streams tributary to the stream on which its original works were constructed. It was again amended by the legislature of 1909 (Laws of 1909, p. 816; Rem. & Bal. Code, § 7123; P. C. 405 § 175). It is there provided that, when such a corporation comes upon a stream which was theretofore navigable, it may exact tolls for all logs and timber products which it drives at the request of the owner, or which it drives without such request when commingled with other logs, or lay in such a position as to obstruct or impede a drive; and also upon all logs and timber products which are driven or floated down a stream which was not theretofore navigable but which is made so by the act of the corporation in driving out the obstructions originally therein. It is further provided that, if such driving corporation is also a booming corporation, and maintains booms upon the stream, it may exact booming charges for all logs and timber products for which it is permitted to exact driving charges.

From the foregoing epitome of the several legislative enactments, it is clear that the statute does not impose upon a booming corporation the duty of catching and booming all logs that may be driven or which may float down the river on which its booming works are constructed. Prior to the amendment of 1909, its duty and right in that respect was limited to logs which the owner requested to be so caught and boomed, or logs which came down the stream not in charge of the owner, regardless of the nature of the stream; that is, whether the stream was by nature capable of floating logs, or whether it had been made so by the acts of the corporation. Nor, after that amendment, did it owe the duty to catch and boom all logs coming to its works in rivers navigable prior to the time it entered upon the river. As to rivers made navigable by the corporation acting as both a booming and driving company, it may owe that duty, since it is empowered to collect both driving and booming tolls on all logs driven or floated down such a stream, whether by

the company itself or whether with or without the aid of some other person. A complaint, to state a cause of action for a breach of duty on the part of either of the corporations permitted to be organized by the statutes, must allege facts sufficient to show that the duty arose; that is to say, that the logs reached the boom of the company in some one of the ways which, under the terms of the statute, gave rise to a duty on the part of the company to catch and boom the logs, and that the company failed and neglected to perform that duty.

Turning to the complaint, we find it alleged that the respondent is a booming and driving company operating a boom at the mouth of the Lewis river; that, between certain dates, the appellant's assignor placed in the river, and floated to the boom of the respondent, a certain quantity of logs; "that it became the duty of defendant to catch and hold, assort and raft said logs," and to account therefor to the appellant's assignor; and that it failed in the performance of that duty. No fact is alleged showing that the duty to boom the logs arose from the operation of the statute. It is not alleged that the owner of the logs requested the respondent to boom them; it is not alleged that the logs came to the boom of the respondent not in charge of their owner; it is not alleged that Lewis river is a stream not capable of floating logs by nature, and that the respondent had made it so floatable. Nor is it alleged that the logs were delivered to the respondent, or that the owner of the logs and the respondent had entered into a contract by which the respondent was obligated to catch and boom the logs. The only allegation which seeks to charge the respondent with a duty is the one above quoted. But this is not an allegation of fact. It is but the conclusion the court would draw from the pleadings were some fact alleged showing that the duty arose. In other words, it is a conclusion of law, not an allegation of fact upon which the other party may take issue.

The appellant cites and relies upon the case of *Chesley v. Mississippi & Rum River Boom Co.*, 39 Minn. 83, 38 N. W. 769, but we cannot think the case in point on the question here presented. In the part of the opinion specially relied upon, the court was discussing the question of the burden of proof. The trial court charged the jury that, if the logs were delivered to the defendant, and not received back again, there was a *prima facie* case of negligence until the receiver of the logs showed that it was not negligent. The court held the charge to be without error. But here there is neither an allegation of delivery nor the allegation of any fact from which delivery can be inferred. Had there been such an allegation, the case would be in point on the question whether the other allegations in the complaint charged a neglect of duty on the part of the respondent; but, as we have attempted to show, the primary question before us is not that, but is, rather, does the complaint show that the respondent owed the appellant the duty of catching and holding the logs?

Our conclusion is that the complaint fails to state a cause of action, and that the judgment must be affirmed upon the first ground stated in the demurrer. This renders it unnecessary to discuss the second. The judgment is affirmed.

MORRIS, C. J., ELLIS, and CHADWICK, JJ., concur.